**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Alexander E. MARABELLES,**
**Defendant-Appellant.**

**No. 83–1101.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 29, 1983.

Decided Jan. 31, 1984.

Carol K. Muranaka, Asst. U.S. Atty., Honolulu, Hawaii, for plaintiff-appellee.

Clayton C. Ikei, Honolulu, Hawaii, for defendant-appellant.

Before ELY, WALLACE and REIN-HARDT, Circuit Judges.

ELY, Circuit Judge:

Marabelles appeals from his judgments of conviction under 26 U.S.C. § 7201 (1976) (two counts of attempted tax evasion for the years 1977 and 1978) and 26 U.S.C. § 7206(1) (1976) (one count of willfully filing a false tax return for the year 1977).

The appeal was timely, and we have jurisdiction under 28 U.S.C. § 1291 (1976). We affirm.

## FACTUAL BACKGROUND

During the years in question, Marabelles was a self-employed painter. On his federal income tax return for 1977, Marabelles reported gross receipts from his painting business in the amount of $10,083.00 and expenses in the amount of $4,394.00. On his tax return for 1978, he reported $11,653.00 as gross receipts from his business and $6,396.00 as expenses. The tax returns were prepared by trained tax preparers, based on information provided by Marabelles.

On October 29, 1982, a four-count indictment was returned against Marabelles, charging him with two counts of attempted tax evasion (1977 and 1978) and two counts of willfully filing false tax returns (1977 and 1978). Marabelles was tried before a jury, beginning February 23, 1983.

At trial, the Government employed the specific items method of proof,[1] to show that the gross receipts from Marabelles' painting business totalled at least $20,000.00 for 1977 and at least $30,000.00 for 1978. Marabelles' defense was based on his assertion that the Government failed to allow him reasonable credit for deductible business expenses.

On March 3, 1983, the jury found Marabelles guilty of two counts of attempted tax evasion and one count of willfully filing a false tax return. The remaining count of the indictment had been dismissed with prejudice by the district judge before the jury began deliberation because a typographical error pertaining to the count had been discovered in the indictment.

On April 18, 1983, Marabelles was sentenced to a term of imprisonment of eighteen months on each count; the sentences as to Counts II and III were ordered to run concurrently with the sentence imposed on Count I. Marabelles has, until now, remained free on bond.

## ANALYSIS

In this appeal, Marabelles urges the following errors. We treat these contentions in the order presented.

### I. SUFFICIENCY OF THE EVIDENCE

#### A. STANDARD OF REVIEW

■ Marabelles strongly urges that the evidence was insufficient to support the jury's verdict. In evaluating such a contention, the trial court must determine whether there was relevant evidence from which the jury could reasonably find the defendant guilty beyond a reasonable doubt, viewing the evidence in the light most favorable to the prosecution. *United States v. Hazeem,* 679 F.2d 770, 772 (9th Cir.), *cert. denied,* 459 U.S. 848, 103 S.Ct. 106, 74 L.Ed.2d 95 (1982). On appeal, our Court applies the same test to review the trial court's decision. *Id. See also Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) ("the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (emphasis in original)).

#### B. ATTEMPTED TAX EVASION

■ The elements of attempted income tax evasion (26 U.S.C. § 7201 (1976)) are: (1) the existence of a tax deficiency, (2) willfulness in attempted evasion of taxes, and (3) an affirmative act constituting an evasion or attempted evasion. *Sansone v. United States,* 380 U.S. 343, 351, 85 S.Ct.

---

1. The specific items method of proof has been described in the following manner:

> The specific item method is . . . direct in its operation. The usual strategy . . . is for the Government to produce evidence of the receipt of specific items of reportable income

by the defendant that do not appear on his income tax return or appear in diminished amount.

*United States v. Horton,* 526 F.2d 884, 886 (5th Cir.), *cert. denied,* 429 U.S. 820, 97 S.Ct. 67, 50 L.Ed.2d 81 (1976).

1004, 1010, 13 L.Ed.2d 882 (1965); *United States v. Conforte,* 624 F.2d 869, 873 (9th Cir.), *cert. denied,* 449 U.S. 1012, 101 S.Ct. 568, 66 L.Ed.2d 470 (1980). Viewing the evidence in the light most favorable to the Government, we conclude that a rational trier of fact could have reasonably found that Marabelles was guilty, beyond a reasonable doubt, of attempted income tax evasion.

### 1. *Tax Deficiencies*

■ As we above stated, the Government used the specific items method of proof to show the existence of tax deficiencies for 1977 and 1978. It introduced into evidence cancelled checks received for services rendered and cashed by Marabelles during these years to establish total gross receipts figures. The Government argues that these figures, when compared with Marabelles' tax returns, reveal substantial unreported income[2] and additional tax liabilities in the amounts of $2,169.26 for 1977 and $4,936.65 for 1978.

In challenging the Government's proof of tax deficiencies, Marabelles does not argue that he reported all his income; instead, he argues that the majority of the unreported income went to unclaimed business expenses. He further asserts that the failure of the Government fully to investigate and incorporate into its case these alleged expenses renders the Government's case fatally defective.

To support his arguments, Marabelles cites evidence purporting to show the existence of labor expenses:

(1) the testimony of one Frank Watanabe that he had observed some 10 to 12 persons, total, work for Marabelles during 1977 and 1978, that it was his opinion that Marabelles had a steady employee, that a painting contractor's gross receipts generally consist of expenses of ⅓ for paint and materials and ⅔ for labor, and that it was his opinion that it was not possible for a single painter

to gross $31,000.00 per year working by himself;

(2) the testimony of the Internal Revenue Service ("IRS") special agent responsible for the Government's investigation of Marabelles that he had not inquired as to Marabelles' business procedures (personal hourly rate, number of hours and days per week worked), and that he had not investigated a deduction on Marabelles' 1978 tax return for workmen's compensation insurance (a deduction usually indicating the existence of employees);

(3) the testimony of another investigating IRS agent that he had noted the deduction taken by Marabelles on his 1978 tax return for liability and unemployment insurance and that he could not recall any instance in which a self-employed person took out unemployment insurance for himself;

(4) the testimony of the Government's summarizing witness, who reconstructed Marabelles' tax returns to substantiate the Government's tax deficiency claim, that he gave Marabelles no credit for labor expenses, even though based on the records he had reviewed (checks to Marabelles' son and third parties, unemployment insurance deduction), it would have been his practice, when performing a civil audit on Marabelles' business, to inquire about labor, and that no additional tax liability would have accrued if the expenses were as Marabelles asserted they were;

(5) the testimony of one Diane DeGuzman that her father was Marabelles' steady employee during 1977 and 1978; and

(6) the testimony of Marabelles that he had no intent to evade taxes, that he had incurred labor expenses in 1977 and 1978 for himself and for other painters, and that he had paid his employees mainly in cash but sometimes by check.

Thus, Marabelles argues that because he had significant additional labor expenses

---

**2.** More specifically, the Government argues that the cancelled checks establish: (1) that Marabelles was paid $20,730.25 for services rendered in 1977 (Marabelles reported $10,-083.00 in gross receipts for 1977); and (2) that Marabelles was paid in excess of $30,000.00 for services rendered in 1978 (Marabelles reported $11,653.00 in gross receipts for 1978).

for 1977 and 1978, he owed no additional taxes for those years.

The Government persuasively rebutted Marabelles' claim for significant additional expenses by showing that:

(1) Marabelles had made prior admissions to IRS agents and to State Farm Insurance Company that he had no employees during 1977 and 1978;

(2) Frank Watanabe was not qualified as an expert in the field of construction bidding;

(3) the checks to Marabelles' son and to third parties did not indicate that they were for labor expenses;

(4) Marabelles did not call as defense witnesses any of the persons he allegedly paid;

(5) Marabelles had told State Farm Insurance Company that he never had employees and that his workers' compensation coverage was solely to allow him to bid on government jobs;

(6) Marabelles did not file any employment tax returns (for employees) during 1977 and 1978.[3]

On this record, a rational trier of fact could have found the existence of a tax deficiency beyond a reasonable doubt.

### 2. *Willfulness*

Willfulness requires a showing of specific wrongful intent to avoid a known legal duty. *United States v. Pomponio,* 429 U.S. 10, 12, 97 S.Ct. 22, 23, 50 L.Ed.2d 12 (1976). Although direct proof of a taxpayer's intent to evade taxes is rarely available, willfulness may be inferred by the trier of fact from all the facts and circumstances of the attempted understatement of tax. *United States v. Conforte,* 624 F.2d 869, 875

(9th Cir.), *cert. denied,* 449 U.S. 1012, 101 S.Ct. 568, 66 L.Ed.2d 470 (1980).

The Government argues that Marabelles' willfulness can be inferred from:

(1) his failure to keep records, *see United States v. Hom Ming Dong,* 436 F.2d 1237, 1240 (9th Cir.1971);

(2) the large amount of his unreported income (51% omitted gross receipts in 1977 and 62% in 1978);

(3) his consistent pattern of not reporting all gross receipts, *see Holland v. United States,* 348 U.S. 121, 139, 75 S.Ct. 127, 137, 99 L.Ed. 150 (1954);

(4) his submitting insufficient information regarding his income to the tax return preparers, *see Spies v. United States,* 317 U.S. 492, 499, 63 S.Ct. 364, 368, 87 L.Ed. 418 (1943);

(5) his practice of dealing in cash, *see Smith v. United States,* 348 U.S. 147, 159, 75 S.Ct. 194, 200, 99 L.Ed. 192 (1954); *United States v. Conforte,* 624 F.2d 869, 875–76 (9th Cir.), *cert. denied,* 449 U.S. 1012, 101 S.Ct. 568, 66 L.Ed.2d 470 (1980); and

(6) his admittedly false statements to IRS agents that he had reported all of his income and that he made out a billing receipt for every painting job he did, *see Spies,* 317 U.S. at 499, 63 S.Ct. at 368.

To support his argument that he did not form the requisite intent to evade taxes, Marabelles relies on:

(1) his in-court statements that he did not intend to evade taxes;

(2) his contention that because of additional unclaimed expenses, there was no tax deficiency, and that, therefore, he could not have formed the intent to defraud the Government; and

---

**3.** In addition to the above evidence, the Government cites case law indicating that:

(1) in "specific items" cases, the Government has no burden to follow all "reasonable leads" as it does in circumstantial evidence (net worth) cases, *United States v. Lawhon,* 499 F.2d 352, 356–57 (5th Cir.1974), *cert. denied,* 419 U.S. 1121, 95 S.Ct. 804, 42 L.Ed.2d 820 (1975); and

(2) the burden is on the defendant to prove that he had allowable deductions that were not

shown in his return, once the Government establishes unreported income and allows the deductions claimed by the defendant in this return and others that it can calculate without his assistance, *Elwert v. United States,* 231 F.2d 928, 933 (9th Cir.1956); *see also Marks v. United States,* 391 F.2d 210, 211 (9th Cir.) (in "specific items" case, burden of proof for deductions is on defendant), *cert. denied,* 393 U.S. 839, 89 S.Ct. 116, 21 L.Ed.2d 109 (1968).

(3) his poor bookkeeping habits.

■ Viewing the evidence as a whole, we are strongly persuaded that a rational trier of fact could reasonably have found beyond a reasonable doubt that Marabelles had formed the requisite intent.

### 3. *Affirmative Acts*

■ The Government argues, and Marabelles does not dispute, that the requisite affirmative acts are established by the filing of the false tax returns. *See Sansone v. United States,* 380 U.S. 343, 352, 85 S.Ct. 1004, 1010, 13 L.Ed.2d 882 (1965); *United States v. Hamilton,* 620 F.2d 712, 717 (9th Cir.1980).

Thus, a rational trier of fact, viewing the evidence in the light most favorable to the Government, could reasonably have found beyond a reasonable doubt that all of the elements of the crime of attempted tax evasion were established. There was sufficient evidence to support the jury's verdict of guilty. Indeed, it would seem to us that a verdict to the contrary could have nearly been characterized as an aberration.

## C. FILING A FALSE TAX RETURN

■ The elements of the crime proscribed by 26 U.S.C. § 7206(1) (1976) are: (1) the defendant made and subscribed a return, statement, or other document that was incorrect as to a material matter; (2) the return, statement, or other document subscribed by the defendant contained a written declaration that it was made under the penalties of perjury; (3) the defendant did not believe the return, statement, or other document to be true and correct as to every material matter; and (4) the defendant falsely subscribed to the return, statement, or other document willfully, with the specific intent to violate the law. *United States v. Brooksby,* 668 F.2d 1102, 1103–04 (9th Cir.1982). The existence of a tax deficiency is not an element of this crime. *See id.*

### 1. *A Return Incorrect as to a Material Matter*

The District Court ruled as a matter of law (and Marabelles does not now dispute) that the underreporting of gross receipts was a material matter. Marabelles stipulated to the authenticity and admissibility of his tax returns for 1977 and 1978.

### 2. *Signed under Penalty of Perjury*

The tax return in question was signed by Marabelles under penalty of perjury.

### 3. *Knowledge*

The Government argues that Marabelles knew the return was false. The return was prepared reflecting only billing receipts furnished by Marabelles to the tax return preparers. Yet, Marabelles knew he frequently did not prepare a billing receipt for payment of a completed job. Thus, the Government contends, Marabelles knew the tax returns did not reflect all of his gross receipts. Marabelles, on the other hand, testified in court that he believed his 1977 tax return was accurate as prepared.

### 4. *Willfulness*

■ The analysis of this element is essentially the same as that contained in our discussion above set forth in respect to the willfulness elements of 26 U.S.C. § 7201 (1976). Much, if not all, of the evidence from which a rational trier of fact could infer that Marabelles "willfully attempted to evade his taxes" could justifiably raise the inference that Marabelles "falsely subscribed to the return willfully with the specific intent to violate the law." *See United States v. Bender,* 606 F.2d 897, 899 (9th Cir.1979). If anything, the Government's case here is stronger than its tax evasion case because it was required to show merely that Marabelles had formed the specific intent to violate the law by underreporting income, rather than to show that he had formed the intent to evade taxes.

■ Here, too, it is our conclusion that a rational trier of fact, viewing the above evidence in the light most favorable to the

Government, could reasonably have concluded that Marabelles was guilty beyond a reasonable doubt of violating 26 U.S.C. § 7206(1).

## II. EXPERT TESTIMONY

### A. STANDARD OF REVIEW

■ Marabelles contends that the District Court committed reversible error when it excluded the testimony of a defense "expert." On review, our Court will reverse only if the District Court abused its wide discretion or committed "manifest error" in excluding that kind of testimony. *United States v. Fleishman,* 684 F.2d 1329, 1336 (9th Cir.), *cert. denied,* 459 U.S. 1044, 103 S.Ct. 464, 74 L.Ed.2d 614 (1982). *See generally Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971) (elements of "abuse of discretion" test). We hold that the District Court did not abuse its discretion.

### B. DISCUSSION

The expert witness offered by Marabelles is a loan officer with First Hawaiian Bank, Honolulu, Hawaii. Marabelles' offer of proof presented the witness' qualifications as a loan officer and his familiarity with financial statements that support business loan applications. Marabelles also offered to prove that this expert relied on a particular reference manual, Robert Morris Associates, in his work and that his proposed witness would present statistics from this manual concerning the costs of producing income in the painting business.

After a review of memoranda presented by both parties, the District Court refused Marabelles' offer of testimony on the costs of producing income after concluding that such testimony lacked reliability and lacked relevance.

Marabelles argues that this evidence would have been relevant to his tax liability.[4] He claims that the data contained in the technical journal coincides with the

business-expense amounts he asserted at trial. Thus, Marabelles argues that the evidence would have tended to resolve a disputed fact in his favor—the amount of his business expenses—in the collective mind of the jury.

#### 1. *Reliability*

■ The District Court's ruling on the issue of reliability turns on whether Marabelles' loan expert was properly an expert on the disputed issues of this case and whether his testimony could reliably assist the jury to determine a material fact in issue. *See* Fed.R.Evid. 702. Marabelles contends that the District Court's ruling on reliability was erroneous because such a determination involved the weight to be given the testimony, not its admissibility. We reject this contention for the following reasons:

(1) The District Court concluded that the witness was an expert on bank loans. There was no showing, however, that the witness was an expert in taxation or in the painting business, that the witness had evaluated Marabelles' business operation or records, or that the expert would offer any testimony specifically relating to Marabelles' unreported income or business expenses.

(2) The technical manual upon which the witness would have based his testimony had only marginal application to the facts of this case. The contractors included in the manual used an entirely different method of accounting than that used by Marabelles. There was no adequate showing that the statistics were based on businesses similar to Marabelles'. Thus, comparisons between Marabelles' business and these general statistics were not shown to be reliable.

(3) Finally, there was no showing that the witness had sufficient expertise to convert the loan application statistics to reflect accurately Marabelles' proper tax deductions or proper tax liability in a manner that would reasonably assist the jury.

---

4. Marabelles also argues the evidence would have been relevant to the issue of willfulness. If he owed no additional taxes because of his

business expenses, Marabelles contends, he could not possess the requisite intent to defraud the Government.

On this record, the District Court did not abuse its wide discretion when it excluded the witness' testimony on the ground of lack of reliability.

### 2. *Relevance*

 Marabelles makes a somewhat stronger case regarding the relevance of the proposed testimony. The District Court ruled that it was "not relevant to use a guesstimate for the defendant's defense where the government's case is made on specific items." Marabelles argues that the testimony would have been probative of the amount of his business expenses—a fact of consequence at the trial. *Cf.* Fed.R.Evid. 401. The Government contends that a "guesstimate" of deductions based on aggregate industry expenses has no probative value with regard to the question of this particular appellant's proper tax liability.

Our analysis of the record leads us to conclude that there probably was some probative value in the testimony. But that does not necessarily mean that its exclusion constituted such an abuse of discretion as to require reversal.

The District Court also found that the evidence was cumulative of testimony already in the record. It ruled that the prior testimony of Watanabe regarding the "rule-of-thumb" in the local industry concerning contractors' business expenses essentially would be duplicated by the proposed expert witness' testimony. The exclusion of relevant, but cumulative, evidence is within the sound exercise of the trial court's discretion. *United States v. Elksnis,* 528 F.2d 236, 239 (9th Cir.1975). *See also* Fed.R.Evid. 403 ("Although relevant, evidence may be excluded if its probative value is outweighed ... by considerations of ... needless presentation of cumulative evidence."). The District Court did not abuse its discretion

when it excluded the proposed witness' testimony.

### III. JURY INSTRUCTION

At the conclusion of the trial, Marabelles requested that the following instruction, based on *Cohan v. Commissioner,* 39 F.2d 540 (2d Cir.1930),[5] be read to the jury:

If you find that the defendant has reasonable and necessary business expenses for which he does not possess adequate records to verify the exact amount of such reasonable and necessary business expenses, you're instructed that you may rely upon reasonable estimates to determine the amount of such business expenses.

Marabelles argues that the District Court committed reversible error when it refused the instruction because it "deprived the defendant of the very foundation of his affirmative defense, reasonable estimates to establish his business deductions in light of his inadequate business records." The District Court's refusal was predicated upon "the fact that *Cohan v. Commissioner* makes reference with respect to civil matters and civil cases and it is not cited as proper authority." The refusal of the instruction could not have materially affected the § 7206(1) conviction since a tax deficiency is not an element of that crime. We hold that the District Court's rejection of the proposed instruction was not erroneous.

### A. STANDARD OF REVIEW

 When reviewing a claim of error relating to jury instructions, the instructions must be viewed as a whole. *United States v. Abushi,* 682 F.2d 1289, 1299 (9th Cir.1982). Moreover, the adequacy of the entire charge must be evaluated in the context of the whole trial. *United States v. James,* 576 F.2d 223, 227 (9th Cir.1978). A trial judge is given substantial latitude in tailoring the instructions so long as they

---

5. In *Cohan,* the appellate court remanded to the Board of Tax Appeals with instructions to make some estimate of George M. Cohan's deductible entertainment expenses in light of the Board's express finding that Cohan had spent "considerable sums" and that such were allow-

able expenses. 39 F.2d at 543–44. The court noted the inconsistency between the Board's finding that considerable allowable expenditures had been made and its disallowance of the deduction entirely because of the lack of specific proof. *Id.*

fairly and adequately cover the issues presented. *Id.* at 226. Finally, although a criminal defendant is entitled to an instruction regarding his theory of the case, challenges which merely pertain to the trial judge's language or formulation of the charge are reversible only for an abuse of discretion. *Id.* at 227.

## B. DISCUSSION

The *Cohan* instruction was properly refused for two reasons.

Preliminarily, we note that, as the District Court pointed out, the *Cohan* rule on its face applies to civil, not criminal, matters. Yet, the burden of proof in criminal matters is less with respect to the taxpayer than it is in civil matters. Thus, this ground for refusal is, in our opinion, somewhat tenuous.

■ First, Marabelles, unlike Cohan, was allowed some deductions even though he did not establish the full amounts he later claimed. Under *Cohan,* if it is clear that the taxpayer is entitled to *some* deduction, but he cannot establish the full amount claimed, it is improper to deny the deduction in its entirety. *See Coloman v. Commissioner,* 540 F.2d 427, 431–32 (9th Cir.1976). Here the deductions were not denied in their entirety. Marabelles was allowed all claimed business deductions and given the benefit of the doubt on all expenses written on his business checking account, although he admitted that some of these expenses were personal. And, it was shown that some of the business checks could have been for labor expenses. Thus, the *Cohan* rule is inapplicable in this case.

■ Second, even if *Cohan* were applicable, Marabelles cannot invoke its rule as a substitute burden of proof. *See id.* Here, the burden was on Marabelles to prove additional business deductions. The District Court gave no instruction stating that Marabelles must have had adequate records to prove his expenses. Yet, the jury found Marabelles guilty beyond a reasonable doubt. In our view, the jury could not have believed that Marabelles had

substantial additional business expenses and still have found him guilty beyond all reasonable doubt.

Furthermore, considering all the evidence admitted, including the testimony based on estimates of the percentages of a painting contractor's expenses, and all of the instructions given, Marabelles did not need another jury instruction to enable him adequately to present and argue his "business expense" theory, nor did the jury need another instruction to authorize its consideration of the theory or the evidence he presented. The District Court did not commit reversible error when it refused the requested jury instruction.

The judgments of conviction are

AFFIRMED.