988 F.2d 126
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Mark A. WOOD, Defendant-Appellant.
 No. 89-50358.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 3, 1992.
Decided Feb. 23, 1993.
 
 Appeal from the United States District Court for the Central District of California, No. CR-88-0292-TJH; Terry J. Hatter, Jr., District Judge, Presiding.
 C.D.Cal.
 AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
 Before BEEZER, KOZINSKI and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Mark Wood appeals his jury conviction for two counts of subscribing to a false tax return. See 26 U.S.C. § 7206(1).
 
 
 3
 A. Wood argues the warrant to search his office, which uncovered incriminating business records, lacked probable cause because the information forming the basis of the warrant was "stale." We give the magistrate's finding of probable cause deference. E.g., United States v. Angulo-Lopez, 791 F.2d 1394, 1396 (9th Cir.1986).
 
 
 4
 Agent Williams' affidavit stated he interviewed a person who, three months earlier, was employed at Wood's office and had observed folders and records in Wood's possession linking him to Courier, Ltd. See ER 43-45. A magistrate need only determine whether there are reasonable grounds to believe the items sought are located in the place to be searched. United States v. Fannin, 817 F.2d 1379, 1382 (9th Cir.1987). In deciding whether the information supporting probable cause is stale, we consider "the nature of the criminal activity involved and the kind of property for which authorization to search is sought." United States v. Reid, 634 F.2d 469, 473 (9th Cir.1980), cert. denied, 454 U.S. 829 (1981). Although three months might be too long to justify a search for something small and likely to be moved, see, e.g., United States v. Solario, 577 F.2d 554, 555 (9th Cir.1978) (handgun), business records are generally stationary and information of considerable vintage may support probable cause, see United States v. Dozier, 844 F.2d 701, 707 (9th Cir.) (5 1/2 months not too long for business documents), cert. denied, 488 U.S. 927 (1988). There was ample reason to believe the records were still in Wood's office.
 
 
 5
 Wood also argues that the warrant was insufficiently specific, thereby compromising papers which should have remained private. See United States v. Washington, 797 F.2d 1461, 1472 (9th Cir.1986). While specificity is required to avoid the dangers of general warrants, "[a] warrant must only be 'reasonably specific, rather than elaborately detailed, in its description of the objects of the search.' " United States v. Storage Spaces Designated Nos. 8 & 49 Located at 277 East Douglas, Visalia, Cal., 777 F.2d 1363, 1368 (9th Cir.1985) (citation omitted), cert. denied, 479 U.S. 1086 (1987). In evaluating specificity, we also consider appendices incorporated into warrants. See United States v. Pollock, 726 F.2d 1456, 1466 (9th Cir.1984); see also United States v. Weinstein, 762 F.2d 1522, 1531, amended on other grounds, 778 F.2d 673 (11th Cir.1985), and cert. denied, 475 U.S. 1110 (1986). Here, Appendix A limited the search to such things as "[b]anking records for Courier USA"; "[a]ll records of contact between Mark Wood, Nella Wood, or anyone on behalf of Courier USA, Inc."; and "[t]elephone bills showing calls made to or received from the Cayman Islands." ER 34. The particularity of this document easily satisfied the Fourth Amendment.
 
 
 6
 B. Wood claims there was insufficient evidence to support a finding that he willfully subscribed to a false tax return, an essential element of a conviction under 26 U.S.C. § 7206(1). See United States v. Marabelles, 724 F.2d 1374, 1379 (9th Cir.1984). We will affirm his conviction if, " 'reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " United States v. Bishop, 959 F.2d 820, 829 (9th Cir.1992) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).
 
 
 7
 Because direct proof of willfulness is rarely available, it may be proven by circumstantial evidence. Spies v. United States, 317 U.S. 492, 499 (1943). There was evidence that Wood routed all Courier checks sent to his daughter, who passed them through banks in the Cayman Islands and then transferred them into his United States account. The documents Wood produced for the grand jury had been altered. RT 4/20/89 at 148-50. There was also evidence suggesting Wood manufactured evidence to conceal prior transactions. Suspicious record-keeping and contrived transactions can support a finding of willfulness. See Marabelles, 724 F.2d at 1379; United States v. Conforte, 624 F.2d 869, 875 (9th Cir.), cert. denied, 449 U.S. 1012 (1980). A rational trier of fact could have concluded that Wood willfully subscribed to the false returns.
 
 
 8
 C. Wood's next argument is that he relied on his tax attorney and accountant in preparing the returns, thereby negating the element of willfulness. "Reliance on advice of counsel is not a complete defense but only 'a circumstance indicating good faith which the trier of fact is entitled to consider on the issue of fraudulent intent.' " United States v. Crum, 529 F.2d 1380, 1383 (9th Cir.1976) (citation omitted). Far from supporting his claim that he relied in good faith on his advisers, Wood's accountant and attorney both testified they warned Wood that funds transferred from offshore banks were taxable. See RT 4/20/89 at 12-14; id. at 255. Moreover, Wood withheld details of the Cayman Islands accounts from both of his advisers. See id. at 16-19; id. at 256. "Essential to the claim of reliance on counsel is a showing that the ... advice be obtained after full disclosure of all of the facts to which the advice pertains." Conforte, 624 F.2d at 877 (emphasis added). The jury was thus entitled to reject Wood's defense of reliance on his advisers.
 
 
 9
 D. Wood argues the government violated the Speedy Trial Act by failing to bring him to trial within seventy days of his indictment. See 18 U.S.C. § 3161(c)(1). Wood was arraigned on June 2, 1986, with trial scheduled for July 8, 1986--a total of 36 days. It was continued until January 6, 1987; the court excluded the interim from Speedy Trial calculation. The government then dismissed the indictment on its own motion. The government filed a new indictment on April 6, 1988, and arraigned Wood on April 25, 1988.[1] The court then excluded further time, 43 days later, on June 7, 1988.
 
 
 10
 When the government dismisses an indictment, and brings a new indictment for "any offense required to be joined with that [first] offense," 18 U.S.C. § 3161(h)(6), the Speedy Trial clock is tolled, rather than reset, see, e.g., United States v. Magana-Olvera, 917 F.2d 401, 405 (9th Cir.1990). The critical question is whether the second indictment was for an "offense required to be joined with that [first] offense." If it was, then the clock was tolled during the interim, resulting in a total of 79 days. If the clock restarted, though, there was no Speedy Trial violation.
 
 
 11
 Whether two offenses are required to be joined is determined by whether separate trials would violate the Double Jeopardy Clause. See United States v. Rein, 848 F.2d 777 (7th Cir.1988); United States v. Novak, 715 F.2d 810 (3rd Cir.1983), cert. denied, 465 U.S. 1030 (1984). "[T]he Double Jeopardy Clause bars any subsequent prosecution in which the government, to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted." Grady v. Corbin, 495 U.S. 508, 521 (1990).
 
 
 12
 The government argues the offenses need not be joined because the indictments covered different statutory violations: The first was for violations of 26 U.S.C. § 7201, income tax evasion; the second for violations of 26 U.S.C. § 7206(1), subscribing to a false return. Section 7206, however, is a lesser included offense of section 7201, because all of the legal elements that establish a section 7206 violation are comprehended by a section 7201 violation. See Sansone v. United States, 380 U.S. 343, 350-52 (1965) (defendant charged with § 7201 violation entitled to lesser included offense instruction for subsequent provisions); see also United States v. Kaiser, 893 F.2d 1300, 1306 (11th Cir.1990) (§ 7206(1) included within § 7201); United States v. Gengo, 808 F.2d 1 (2nd Cir.1986) (same); United States v. Lodwick, 410 F.2d 1202 (8th Cir.), cert. denied, 396 U.S. 841 (1969) (same). The offenses were therefore required to be joined within the meaning of 18 U.S.C. § 3161(h)(6).
 
 
 13
 The government also contends that if the second indictment covered the same conduct as the first, then the exclusions from the first indictment should continue automatically with the second. The district court excluded July 8, 1986 through January 6, 1987 under 18 U.S.C. § 3161(h)(8); the indictment was dismissed on December 12, 1986. After reindictment, the defendant was rearraigned April 25, 1988. The next order granting excludible delay covered June 7 through August 2, later extended to October 18, 1988. The first exclusion had already expired on a date certain--January 6--long before the second indictment was brought and the defendant rearraigned, on April 25. The exclusion had already ceased operating by its own terms, so there's no way that the time from April 25 until June 7 can be considered "delay resulting from a continuance." 18 U.S.C. § 3161(h)(8)(A). The government may have a good argument that the exclusion should run after reindictment; but it should have presented it to the district court. Without an order from the court, the exclusion doesn't apply. The fact that the government later did move for an exclusion on the same grounds it had on the first indictment, see S.E.R. 33, also undermines its position that the exclusion continued to run by its own force.[2]
 
 
 14
 Finally, the government relies on the stipulation signed by both parties requesting further time due to the fact that the second indictment was "different" than the first, necessitating additional preparation. S.E.R. 33. The second indictment was different in some respects: It included years that weren't covered by the first indictment, and it charged Wood under a different statutory provision. But the parties' use of the term "different" doesn't necessarily mean different for all purposes. As we have said, section 7206 is not different from section 7201 for Speedy Trial purposes.
 
 
 15
 Because the second indictment was for conduct required to be joined in the first indictment, the clock was tolled for any tax years in common between the indictments. The first indictment covered tax years 1980-82; the second indictment covered tax years 1981-83. Wood was convicted on counts two and three, covering tax years 1982 and 1983. His conviction for tax year 1982 should have been joined with the first indictment, and the clock as to the 1982 count was merely tolled. Wood was therefore tried for tax year 1982 more than seventy days after arraignment, and we must reverse the district court's denial of his motion to dismiss the indictment for count two. See 18 U.S.C. § 3162(a)(2). We affirm his conviction for count three because the first indictment didn't cover tax year 1983; the trial for count three took place within 70 days, less excludable time.
 
 
 16
 The remaining question is whether the dismissal is with or without prejudice. The government indicted Wood once for tax year 1982, then dismissed the indictment. It indicted him a second time, and failed to comply with the Speedy Trial Act. A third indictment of Wood for tax year 1982 would precipitate a trial concerning conduct that occurred over a decade ago. Wood's defense would be seriously prejudiced by the passage of ten years. The district court is therefore instructed to dismiss the indictment with prejudice.
 
 Conclusion
 
 17
 Wood's conviction for count three (tax year 1983) is AFFIRMED in all respects; his conviction for count two (tax year 1982) is REVERSED, and the case is REMANDED to the district court with directions to DISMISS count two of the indictment with prejudice.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The Speedy Trial clock runs from the date of indictment or appearance before judicial officer, whichever is later. 18 U.S.C. § 3161(c)(1). Here, the clock commenced again with arraignment
 
 
 [2]
 The government cites United States v. Roman, 822 F.2d 261, 264 (2nd Cir.1987), for the proposition that "when reindictment follows dismissal the exclusions of time allowed under the first indictment continue to apply." But the facts of Roman were much different; Roman tried to take advantage of the expended days on the first indictment while denying the government the benefit of the excluded time under the first indictment. Thus Roman merely restates the familiar proposition that a defendant may not have his cake and eat it, too