106 F.3d 409
 79 A.F.T.R.2d 97-538, 97-1 USTC P 50,314
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Guy Richard BENNALLACK, Defendant-Appellant.
 No. 95-10532.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 4, 1996.
Decided Dec. 27, 1996.
 
 Before: FLETCHER, FARRIS, and HALL, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Defendant-appellant Guy Richard Bennallack appeals from his convictions and sentencing on thirteen counts relating to defrauding the government through false tax returns. We have jurisdiction, 28 U.S.C. § 1291, 18 U.S.C. § 3742,[1] and we affirm.
 
 I. GATHERING OF EVIDENCE
 
 3
 Appellant argues for the exclusion of evidence allegedly gathered in violation of IRS policy. Absent "unusual circumstances, the exclusionary rule does not apply when IRS agents violate internal regulations, without also infringing on constitutional or statutory rights." United States v. Snowadzki, 723 F.2d 1427, 1430-31 (9th Cir.1984). Here, however, there was no violation of internal regulations or of appellant's rights.
 
 
 4
 Labertew's information was only a first indication of fraud, which does not warrant transfer to the Criminal Investigation Division ("CID"). See Internal Rev.Manual, § 4565.21. The district court was not erroneous in determining that there was no firm indication of fraud until January, 1993, when Anderson failed to receive adequate explanations in response to documentation provided in December, 1992. IRS policy dictates that at a suspicion of fraud, examiners "should endeavor to ask the taxpayer, the preparer, the representative, or any other involved party for an explanation of the 'discrepancies' which are the basis of the examiner's suspicion of fraud and any other questions which will resolve the question of the taxpayer's intent." Id. This is precisely the type of investigation Anderson undertook with regard to his questioning of Bennallack, Smith, Southern Distributors, and Labertew. The investigation comported with IRS policy.
 
 
 5
 Moreover, appellant's Fourth Amendment rights were not violated. There is no evidence that CID was involved in agent Anderson's investigation prior to January, 1993, and appellant was therefore not deceived as to the investigation's nature. See U.S. v. Tweel, 550 F.2d 297, 299 (5th Cir.1977). Appellant has not met his burden of showing that the investigator engaged in "sneaky deliberate deception" or that he affirmatively and intentionally misled the defendant as to the nature of the investigation. See Id. The district court correctly denied defendant's motion to dismiss the indictment or, in the alternative, to suppress evidence.
 
 II. USE IMMUNITY
 
 6
 Next, appellant argues that he was denied Fifth and Sixth Amendment rights because the prosecutor did not offer to grant use immunity to Labertew, a defense witness. Appellant has no Sixth Amendment right to demand use immunity for a witness who invokes his privilege against self-incrimination. U.S. v. Baker, 10 F.3d 1374, 1414 (9th Cir.1993). Moreover, his due process rights are not violated absent proof of prosecutorial misconduct. United States v. Montoya, 945 F.2d 1068, 1078 (9th Cir.1991).
 
 
 7
 The prosecution's behavior here does not warrant an exception to this rule. The prosecution did not examine the witness, and therefore did not induce him to invoke his Fifth Amendment privilege. See Id. at 1078. Moreover, the prosecution did not intentionally distort the fact-finding process by granting immunity to a witness whose testimony Labertew would directly contradict. See United States v. Westerdahl, 945 F.2d 1083, 1087 (9th Cir.1991). The prosecution did not violate appellant's rights by not volunteering to grant use immunity to defendant's witness.
 
 
 8
 Moreover, defendant did not request at trial that the prosecution grant Labertew immunity, but now raises for the first time on appeal the contention that the government should have granted immunity sua sponte. Thus, even if the prosecution's behavior amounted to error that could have been corrected upon timely objection by defense counsel, it does not warrant reversal because any error did not affect substantial rights or result in a miscarriage of justice. See U.S. v. Young, 470 U.S. 1, 15 (1984).
 
 III. LIMITING SCOPE OF EXAMINATION
 
 9
 We undertake a two part inquiry to determine whether there was in fact error and, if so, if that error was harmless. See Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986).
 
 
 10
 Here, the district court committed no error by limiting the scope of the defense examination. The Sixth Amendment "does not empower a defendant to pursue irrelevant inquiries or exercise complete control" over the examination of a witness. U.S. v. Brown, 936 F.2d 1042, 1048 (9th Cir.1991). A defendant may not call witnesses "for the sole purpose of compelling them to invoke their Fifth Amendment privilege in front of the jury." U.S. v. Licavoli, 604 F.2d 613, 624 (9th Cir.1979).
 
 
 11
 Here, the judge disallowed questioning only into subjects which the witness had asserted his Fifth Amendment privilege not to answer; defendant was free to question Labertew as to all other relevant matters. Because the defense was only prohibited from inquiries which it knew the witness would not answer, it was not denied the opportunity to expose the jury to facts from which jurors "could appropriately draw inferences." Van Arsdall, 475 U.S. at 680. The district court's limitation was not error.
 
 
 12
 In any event, any error here is subject to harmless error analysis, Id. at 680. The defense sought only to elicit testimony to impeach Labertew's credibility. However, the prosecution elicited no information from Labertew, and the defense did not choose to examine him on any point relating to Bennallack. Because Labertew gave no harmful testimony, impeachment would not have mattered. Even assuming that "the damaging potential of the cross-examination were realized," the limitation on examination was harmless beyond a reasonable doubt. Id. at 684.
 
 IV. SUFFICIENCY OF THE EVIDENCE
 
 13
 Appellant argues that there was no proof of the requisite intent for each of the crimes of which he was convicted. We address each crime in turn.
 
 A. Intent required under 18 U.S.C. § 371
 
 14
 Conspiring to defraud the United States in violation of 18 U.S.C. § 371 requires the wrongs to be done by deceit, craft, trickery, or dishonesty. U.S. v. Caldwell, 989 F.2d 1056, 1058 (9th Cir.1993).
 
 
 15
 Here, there was evidence that appellant maintained two sets of books in order to hide cash transactions; paid portions of wages with checks in order to appear legitimate; structured cash transactions to avoid Currency Transaction Reports; and had corporate checks endorsed with false names. There was sufficient evidence for a jury to find beyond a reasonable doubt that defendant acted with deceit, craft, trickery, or dishonesty.
 
 
 16
 B. Intent Required under 26 U.S.C. § 7206(1)
 
 
 17
 Filing a false tax return, proscribed by 26 U.S.C. § 7206(1), requires that "the defendant falsely subscribed to the return, statement, or other document willfully, with the specific intent to violate the law." U.S. v. Marabelles, 724 F.2d 1374, 1380 (9th Cir.1984) (citation omitted). Because direct evidence of specific wrongful intent is "rarely available, willfulness may be inferred by the trier of fact from all the facts and circumstances." Id. at 1379. There need not be evidence rising to the level of defendant's intent to evade taxes, so long as there is evidence sufficient to infer an intent to violate the law by underreporting. Id. at 1380.
 
 
 18
 Here, there was evidence that, on several occasions, appellant told witnesses that he paid cash wages to avoid taxes. Moreover, he kept two sets of books and destroyed relevant documents after he learned of the pending IRS investigation. Thus, there was sufficient evidence to infer an intent to violate the law. See Id.
 
 
 19
 C. Intent required under 26 U.S.C. § 7206(2)
 
 
 20
 Here, the government must prove defendants acted with specific intent to defraud the government in the enforcement of its tax laws. U.S. v. Salerno, 902 F.2d 1429, 1432 (9th Cir.1990) (citations omitted). Knowledge that one's action will result in a false return, coupled with motive to avoid the payment of taxes, or a benefit inuring to the defendant is sufficient. See Id. at 1433 (summarizing cases upheld under § 7206(2)).
 
 
 21
 Here, in addition to the evidence discussed above, there was evidence that appellant knew that paying employees in cash would result in their false reporting of taxes, and that appellant would benefit from such underreporting. This evidence is sufficient for a jury to find intent to defraud the government in enforcement of its tax laws.
 
 V. APPLICATION OF THE SENTENCING GUIDELINES
 
 22
 Finally, appellant argues that, for several reasons, the sentencing court erred in applying the sentencing guidelines. We address each argument in turn.
 
 A. Base Offense Level
 
 23
 The district court correctly determined appellant's base level offense of 16. The court heard three days of evidence regarding the amount of the tax loss and based its factual findings on the computations of both the government's expert and of the Department of Probation. Appellant's only support for its challenge is its bare contention that its expert's calculations are more accurate than those relied on by the district court. Appellant points to no specific error in the district court's factual findings, and we find no clear error.
 
 B. Sophisticated Means
 
 24
 Sophisticated means includes conduct that is "more complex or demonstrates greater intricacy or planning than a routine tax-evasion case." U.S.S.G. § 2T1.4, comment. n. 3. Appellant's challenge rests on his assertion that he was not sophisticated in his knowledge of tax laws. The jury necessarily rejected this argument with its guilty convictions. Here, appellant created false documentation to hide his illegal conduct; provided false W-2 forms to his employees for them to prepare false returns; used Southern Distributors as a secret supplier of cash by directing them to issue rebate checks to appellant; evaded detection by instructing Southern Distributors to issue the checks in amounts less than $10,000; maintained two sets of books in order to conceal sales; withheld information from his tax-advisors in order to falsify his returns; withheld invoices from the IRS. Appellant's convictions, coupled with the overwhelming evidence, belie appellant's claim that he was not sophisticated in his means. The district court's findings here were not clearly erroneous, and its application of the guidelines in this regard was correct.
 
 
 25
 C. Substantial portion of income derived from pattern or scheme
 
 
 26
 Appellant argues that the income derived from the criminal pattern or scheme was not a "substantial" portion of his income because he received more income from other investments. The district court noted that the guidelines do not define "substantial," but that the 16 counts of appellant's conviction support a finding that a significant amount of Cedar Roofing's income derived from appellant's scheme. Appellant's source of business income was Cedar Roofing. Accordingly, the court concurred with the Department of Probation's recommendation that a two-level increase was appropriate here. Appellant points to nothing erroneous in the court's findings, and this court finds no clear error. The two-level increase was appropriate.
 
 D. Appellant's Role as Organizer or Leader
 
 27
 Here, the district court was not clearly erroneous in finding that Bennallack had decision making authority; that Bennallack in fact made decisions to pay workers in cash; that appellant, as 100% shareholder in Cedar, benefitted the most from the scheme; and that appellant was the organizer of the criminal conduct. The district court correctly used these facts in applying the guidelines and determining a two-level enhancement. See U.S.S.G. § 3B1.1, comment. n. 4.
 
 E. Obstruction of Justice
 
 28
 Shredding documents relevant to an official investigation is a sufficient basis for this enhancement. U.S.S.G. § 3C1.1, comment n. 3(d). It matters not that appellant did not actually shred the documents, so long as he ordered them to be shredded. The record is clear that the district court based this enhancement on the testimony of Kelly Casey, who testified that Cedar employees began shredding older records after the current investigation began. The district court's findings here are supported by testimony, and not clearly erroneous. The enhancement for obstruction of justice will stand.
 
 F. Acceptance of Responsibility
 
 29
 The guidelines apply only to a defendant who "clearly demonstrates acceptance of responsibility." U.S.S.G. § 3E1.1(a). This discretionary decrease is not intended to apply to "a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." Id., comment., n. 2. Conduct resulting in an enhancement under § 3C1.1 for obstruction of justice "ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct." Id. comment., n. 4. The sentencing judge is "in a unique position to evaluate a defendant's acceptance of responsibility" and is "entitled to great deference on review." Id., comment., n. 5.
 
 
 30
 Here, the district court found that appellant obstructed justice by ordering the shredding of relevant documents, and found appellant's testimony as to his intent patently incredible. These factual determinations were not clearly erroneous and are entitled to deference on review. The district court correctly denied appellant's request for a downward departure.
 
 G. Downward Departure for Other Factors
 
 31
 Appellant does not claim that the guidelines specifically mandate downward departure for these other factors, but rather challenges the district court's discretionary decision not to depart downward. This court lacks jurisdiction to hear this claim, as the district court's "discretionary refusal to depart downward is not reviewable on appeal." U.S. v. Morales, 898 F.2d 99, 101 (9th Cir.1990). The appeal on this ground is therefore dismissed.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Section 3742 does not, however, confer jurisdiction on this court to hear appellant's challenge to the district court's discretionary refusal to depart downward from the sentencing guidelines; we therefore dismiss that part of his appeal. See infra, Part V.G