UNITED STATES of America, Plaintiff-Appellee,

v.

Peter Miguel LOPEZ, Defendant-Appellant.

No. 82–6117
Non-Argument Calendar.

United States Court of Appeals, Eleventh Circuit.

March 30, 1984.

Rehearing and Rehearing En Banc Denied May 7, 1984.

Peter Miguel Lopez, pro se.

Stanley Marcus, U.S. Atty., Linda Collins Hertz, Robert J. Bondi, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before HATCHETT, ANDERSON and CLARK, Circuit Judges.

PER CURIAM:

Appellant Peter Lopez was convicted in a jury trial for giving false information to the Immigration and Naturalization Service ("INS"), in violation of 18 U.S.C.A. § 1001 (West 1976). On appeal, he alleges, *inter alia,* that the false information he provided was not "material" so as to support his criminal conviction. We affirm.

I.

Peter Lopez is an attorney in Miami, Florida, with an active immigration law practice. Between 1978 and 1980, he represented 22 foreign nationals seeking residency in the United States. His actions on behalf of these clients are the source of the conviction appealed from.

Lopez filed an Application for Status as Permanent Resident (Form I–485) for each of his 22 clients. The form has a box for entering an applicant's "priority date," *i.e.,* the date that the foreign citizen first notified an American Consular office of the intention to seek residency in the United States. This date is used to determine the order in which aliens will be granted residency according to the preference system used by the INS.

Lopez acknowledges that he knowingly placed false priority dates on the applications. None of his clients had, in fact, received priority dates when the forms were filed. Lopez' reason for this intentional deception is complicated. He testified that he planned to file a class action lawsuit or seek a private bill in Congress on behalf of his clients in order to obtain residency for them. However, he determined that neither option would be available unless he first "exhausted" administrative remedies before the INS. Because he thought that the placement of a false priority date normally results in an accelerated official denial of an application (whereas explaining that the applicant has no date prevents the INS from deciding the application), he chose to falsify the information and thereby speed up the exhaustion of administrative remedies.[1] These falsifications were detected and this criminal action was initiated.

II.

On appeal, Lopez raises various issues. We consider the following:

(A) Were the falsified statements "material" within the meaning of 18 U.S.C.A. § 1001?

(B) Did the trial court commit error by failing to recount certain testimony when requested by the jury?

(C) Did the allegation that one juror may have consumed alcohol during the trial warrant a new trial?

(D) Was Lopez' trial counsel ineffective?[2]

A. *The "Materiality" of the False Statements*

18 U.S.C.A. § 1001 (West 1976) states:

---

1. By choosing to falsify priority dates, Lopez impermissibly skipped over the normal administrative procedures used to first decide an alien's residency status.

2. Lopez raises four other issues—that jurors improperly lied when questioned about pretrial publicity; that the court improperly allowed the testimony of absent grand jury witnesses to be read; that Lopez was not put on notice that falsifying information was potentially criminal; and that delay rendered the trial unfair. These arguments are without legal or factual support and require no discussion.

Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than 5 years, or both.

The requirement that the falsification be of a "material" fact, while only contained in the first clause of the statute, has been read into the entire statute so as to exclude trivial falsifications from its coverage. *United States v. Lichenstein,* 610 F.2d 1272, 1278 (5th Cir.), *cert. denied,* 447 U.S. 907, 100 S.Ct. 2991, 64 L.Ed.2d 856 (1980).[3] To be "material," a falsification "must have a natural tendency to influence, or be capable of affecting or influencing, a government function." *United States v. McGough,* 510 F.2d 598, 602 (5th Cir.1975).[4] It makes no difference that a specific falsification did not exert influence so long as it had the *capacity* to do so. *United States v. Lichenstein,* 610 F.2d at 1278.

Lopez argues that his falsifications had no capacity to influence INS activity. He thought that the priority dates would be checked, found to be false, and lead to the denial of the applications. In fact, the very success of his scheme to bypass administrative remedies depended on the discovery of the falsification. In every case, the improper priority date was eventually discovered by INS officials.

▇ Even assuming that Lopez' statements could not trick the INS into granting residency, several considerations combine to persuade us that the district court was cor-

rect in concluding that the "materiality" element is met here.

The submission of falsehoods influenced the agency's treatment of the applications. Had no date been placed on the forms, they would have been returned to the applicants. Instead, Lopez placed false dates on the forms to compel a denial that would serve his personal ends. The capacity of the falsehoods to compel a different agency response establishes "materiality."

In addition, the applications improperly inconvenienced the agency. The INS is a publicly-funded agency with a specific duty to perform. It should not have to waste public resources by processing deceptive applications for an attorney who seeks to employ it as a device to facilitate his plan to file lawsuits on behalf of paying clients. We would be reluctant to hold that a person could file false statements, intending that a government agency would be inconvenienced thereby, so long as he felt that the inconvenience was not too serious. Lopez' intentional diversion of the INS from its duty to process sincere applications had that capacity "to impair or pervert the functioning of a governmental agency" which is the heart of the "materiality" requirement. *United States v. Lichenstein,* 610 F.2d at 1278.

Finally, testimony at trial suggested that aliens with pending I–485 forms would be eligible for various collateral benefits (*e.g.,* work or travel permits). The pendency of the false applications had the "capacity" to improperly affect agency functioning in the grant of such benefits. That capacity is further support for the district court's "materiality" ruling.

The result we reach is supported by *United States v. Diaz,* 690 F.2d 1352 (11th Cir. 1982). In *Diaz,* the defendants were convicted for falsifying records at a plasma center licensed by the Food and Drug Ad-

---

3. In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), this court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *Id.* at 1209.

4. "Materiality" is determined by the district court as a question of law. The ruling, therefore, is subject to complete review by this court. *United States v. Lichenstein,* 610 F.2d 1272 (5th Cir.1980).

ministration ("FDA"). The defendants had overbled certain donors, failed to keep current names or addresses, and falsely labeled plasma containers. This court upheld their convictions under 18 U.S.C.A. § 1001 even though there was no requirement—statutory or regulatory—that they keep any records at all. In doing so, it found that the falsifications "could impair the FDA in carrying out its responsibility for protection of the public health." *Id.* at 1358.

Here there was more than a gratuitous recording of false information that could hypothetically impair a government agency. The active filing of the false priority dates (on forms containing a specific warning against the assertion of untrue claims) forced agency officials to engage in needless work. Such action is inexcusable.

### B. The Trial Judge's Failure to Recount Testimony

The jury, during its deliberations, asked the trial judge whether there was testimony about the effect of failing to place a "priority date" on an I–485 form. The judge declined to recount the testimony of two witnesses on this point, instructing the jury that it should use its "collective recollection" in arriving at a verdict. Lopez claims that the refusal to review this testimony was error.

■ A trial judge has broad discretion in responding to the jury's request to read portions of the evidence. *United States v. Quesada-Rosadal,* 685 F.2d 1281 (11th Cir. 1982). The judge's refusal to read the testimony was not an abuse of discretion in this case.

### C. The Allegation of Jury Impropriety

During a recess in the trial, a member of the trial judge's staff saw a juror sipping from a miniature glass bottle. When notified of this, the judge asked the prosecutor and defense counsel if they wished to explore this alleged impropriety. Both counsel refused opportunity to press the issue.

■ A judge's decision on whether to interrogate a juror regarding alleged misconduct is within his discretion. *United States v. Williams,* 716 F.2d 864 (11th Cir. 1983). Given the sketchy nature of the allegation and the lack of interest shown by either attorney when the allegation was made, it was not an "abuse of discretion" for the trial judge to proceed without a hearing about possible misconduct.[5]

### D. The Effectiveness of Defense Counsel

■ Lopez claims that his trial counsel was ineffective. In this circuit, a claim of ineffective assistance of counsel will not be considered for the first time on direct appeal. *United States v. Griffin,* 699 F.2d 1102, 1107 (11th Cir.1983). This rule is necessary because the record of the trial court's proceeding is normally insufficient for purposes of evaluating counsel's performance.

■ In this case, Lopez did raise the ineffective assistance of claim in a motion for new trial. The issue, therefore, is not presented for the *first* time on direct appeal. However, the facts placed in the record by that motion and the subsequent hearing are an insufficient basis upon which to make a ruling. Accordingly, we conclude that the issue is not properly raised here.

For the foregoing reasons, the appellant's conviction is AFFIRMED.

---

**5.** Lopez alleges that his counsel was ineffective. We decide, *infra,* that such an allegation cannot be handled on direct appeal due to the lack of development of a record on the ineffectiveness point.