**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**George Douglas VAUGHN,
Defendant-Appellant.**

**Nos. 83–1285, 84–2299.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 11, 1986.

Decided Aug. 22, 1986.

Brian C. Leighton, Asst. U.S. Atty., Fresno, Cal., for plaintiff-appellee.

Gregory S. Stout, San Francisco, Cal., for defendant-appellant.

Before SNEED, HALL, and KOZINSKI, Circuit Judges.

CYNTHIA HOLCOMB HALL, Circuit Judge:

Defendant-appellant, George Douglas Vaughn, appeals from his convictions, following a jury trial, for conspiracy to import marijuana, 21 U.S.C. §§ 952(a), 963, aiding and abetting the importation of marijuana, 21 U.S.C. § 952(a) and 18 U.S.C. § 2, making a false statement to a government agency, 18 U.S.C. § 1001, and four counts of mail fraud, 18 U.S.C. § 1341, and from the district court's order denying his 28 U.S.C. § 2255 petition to modify or set aside his sentence. We affirm.

I

Emil Wasilowski, Brad Lano, and David Williams, all residents of Minnesota, initiated a plan to import marijuana from Mexico. Williams was responsible for securing an airplane that Wasilowski would pilot. Defendant-appellant Vaughn, an attorney, became involved in the importation scheme when he was introduced to Williams by Brad "Buddy" Lewis, a mutual friend. Vaughn was attempting to lease an airplane owned by Clarence Laughlin, and Lewis knew that Williams was in the market for an airplane. Vaughn ultimately provided Laughlin's airplane for use in the smuggling attempt, and Lewis provided the marijuana to Wasilowski, the pilot, in Mexico.

The government's case against Vaughn was based in large part on Williams' conflicting grand jury and trial testimony. Williams testified before the grand jury that he met with Vaughn and Lewis at Vaughn's home in Columbia, California, in the summer of 1980. Williams initially avoided attempts to "pin [Vaughn] down to a narcotics smuggling charge," saying that he had some fear for himself and his family if he testified against Vaughn. Ultimately, however, Williams testified that Vaughn knew at the time of this initial meeting that the airplane would be used to smuggle narcotics. Williams also recalled a discussion with Vaughn at the hangar regarding the benefit which certain medical stickers on the airplane would provide when the airplane was taken in and out of the country.

According to Williams, all three men went to the hangar to view the airplane during the first meeting. Vaughn and Williams reached a "vague" arrangement regarding Williams' use of the airplane, because Williams did not have sufficient funds to buy the airplane outright. Williams remembered discussions regarding a $5,000 down payment and the need to make the airplane available one weekend a month so that another lease arrangement could be honored. Williams testified, however, that there was no agreement regarding the length of the lease term, the rental fee, or the lessee's obligation to take out insurance.

Williams also testified before the grand jury regarding a second meeting with Vaughn in Columbia in October 1980. At this time Williams picked up the airplane keys and hangar keys from Vaughn, and provided Vaughn with information on Wasilowski's flying experience and his pilot's license number. Williams suggested to Vaughn that Wasilowski's right to possess the airplane should be documented so that Wasilowski could fly in and out of the United States. Vaughn provided Williams two blank sheets of stationery with his law

firm letterhead. Williams testified that he took the blank sheets of letterhead to Wasilowski in Minnesota, had Wasilowski sign them, and mailed them back to Vaughn. Williams testified that even after this second meeting the agreement for the use of the airplane remained vague. The $5,000 down payment was never made, no firm agreement was reached regarding the amount or term of the lease, and no written agreement was drafted before the airplane was picked up by Wasilowski on October 23, 1980.

Wasilowski's trial testimony corroborated Williams' grand jury testimony, regarding the lease, by indicating that the lease was a "scam." Wasilowski testified:

> Well, the—paper was going to be used for—for backup purposes in case something went wrong, and the people who were providing the aircraft would have—have some kind of assurances that the plane was properly leased. That was my understanding of it. At the time I signed, I really didn't think the paper would ever be used. I didn't believe it could be used, I thought it was silly.

At trial Williams recanted his claim that Vaughn knew the airplane was going to be used for smuggling marijuana at the time of the initial meeting, but admitted that "it wouldn't have taken ... Dick Tracy to figure it out." Williams explained the change in his story by stating that he had gotten caught up in his fear of Vaughn, but that upon reflection he was sure that Vaughn was not directly informed of the smuggling plans. Williams' statements before the grand jury regarding his meetings with Vaughn, including his statements about Vaughn's knowledge of the planned smuggling, were introduced at trial as prior inconsistent statements under Fed.R.Evid. 801(d)(1)(A). At trial Williams remembered having a discussion regarding the stickers on the airplane, but could not remember whether the discussion was with Vaughn. Williams' testimony regarding the lease was unchanged at trial.

The smuggling effort failed when Wasilowski was apprehended attempting to return to the United States with 250 pounds of marijuana on November 9, 1980. The airplane was seized. Vaughn then acted as Laughlin's attorney in seeking remission of the airplane. Vaughn filed a petition for remission under 19 C.F.R. § 171.11, stating that Laughlin had no knowledge of the illegal activities and that the airplane was in Wasilowski's possession under a lease purchase agreement at the time of the illegal activity. Vaughn attached a copy of the lease which he had filled in on the blank letterhead Wasilowski had signed. The lease, dated October 16, 1980, provided for a six-month rental at $2,500 per month with a $5,000 down payment which would be applied against the final two-months' rent. The lease also specified that the lessee shall insure the aircraft for $50,000 and carry liability insurance of $100,000/$300,000. Vaughn later sent follow up letters regarding remission of the airplane to customs officials on three occasions.

## II

We review the question of whether Vaughn is responsible for the statements in the lease and the petition for remission *de novo*, and the other legal errors asserted by Vaughn *de novo*. *United States v. McConney*, 728 F.2d 1195, 1200–01 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

We will overturn a jury's verdict of conviction for lack of sufficient evidence only if no rational trier of fact could have found beyond a reasonable doubt that the defendant committed the offense in question. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). The evidence is viewed in the light most favorable to the government, *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), and the government is entitled to all reasonable inferences that might be drawn therefrom, *United States v. Price*, 623 F.2d 587, 591 (9th Cir.), *cert. denied*, 449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475 (1980).

## III

Section 1001 prohibits the making of material false representations to a government agency regarding a matter within the agency's discretion. *United States v. Carrier*, 654 F.2d 559, 561 (9th Cir.1981); *United States v. Valdez*, 594 F.2d 725, 728–29 (9th Cir.1979). A statement is considered material if it has the propensity to influence agency action; actual influence on agency action is not an element of the crime. *Valdez*, 594 F.2d at 728–29. The statement must be made intentionally and with the knowledge that it is false, *Carrier*, 654 F.2d at 561, but the defendant need not know of the agency's jurisdiction and he need not intend to deceive, *United States v. Yermian*, 468 U.S. 63, 73, 104 S.Ct. 2936, 2942, 82 L.Ed.2d 53 (1984). Section 1001 also prohibits the knowing filing of any false document with a government agency. *United States v. Benz*, 740 F.2d 903, 910 (11th Cir.1984) (false charter agreement), *cert. denied*, —— U.S. ——, 106 S.Ct. 62, 88 L.Ed.2d 51 (1985); *Valdez*, 594 F.2d at 728. Like a false statement, the false document must have the propensity to influence agency action. *See United States v. Green*, 745 F.2d 1205, 1208 (9th Cir.1984), *cert. denied*, —— U.S. ——, 106 S.Ct. 259, 88 L.Ed.2d 266 (1985); *United States v. Johnson*, 530 F.2d 52, 54 n. 2 (5th Cir.), *cert. denied*, 429 U.S. 833, 97 S.Ct. 96, 50 L.Ed.2d 97 (1976).

The government proceeded on the theory that the statements in the petition for remission—that Wasilowski and Laughlin entered into a "Purchase Option, Lease Agreement" and that Laughlin did not know or have reason to know of Wasilowski's criminal record or that the airplane "would be used for the purpose that resulted in its seizure"—were knowingly false, and, in the alternative, that Vaughn attached the lease which he knew to be a sham. We conclude that the statements in the petition for remission and the lease agreement are properly attributable to Vaughn, and that there is sufficient evidence from which the jury could conclude that the lease and the statements in the petition for remission were materially false.

### A

An attorney may incur criminal liability as a principal for documents he has prepared and submitted for his client. *See United States v. Lopez*, 728 F.2d 1359, 1361–63 (11th Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 112, 83 L.Ed.2d 56 (1984); *United States v. Librach*, 520 F.2d 550, 552 (8th Cir.1975), *cert. denied*, 429 U.S. 939, 97 S.Ct. 354, 50 L.Ed.2d 308 (1976). For example, in *Lopez* the defendant attorney was convicted for violating section 1001 when he falsified priority dates on applications for permanent resident status he submitted on behalf of his immigration clients, in order to speed up the administrative process and permit his clients to pursue a class action. 728 F.2d at 1361–62. The *Lopez* court found that the attorney's actions constituted a material false statement prohibited by section 1001, even though the actions were taken on behalf of the clients. *Id.* at 1362–63.

In this case Vaughn negotiated with Williams regarding the use of the plane, filled in the lease agreement under Wasilowski's signature, and drafted and signed the petition for remission filed on behalf of Laughlin. As discussed below it was Vaughn, not Laughlin, who knew the statements in the petition and the lease were false. Under these circumstances Vaughn is properly considered the maker of the statements, even though the petition for remission was also signed by Laughlin, and the petition for remission and the lease were submitted on Laughlin's behalf.

Holding Vaughn responsible for the statements in the petition for remission and the lease is consistent with those decisions which have imposed criminal liability under 18 U.S.C. § 2 against persons who commit crimes through an innocent agent. *See United States v. Tobon-Builes*, 706 F.2d 1092, 1099 (11th Cir.1983) (section 1001 case); *United States v. Ruffin*, 613 F.2d 408, 412 (2d Cir.1979). Section 2 punishes a person who "[w]illfully causes an

act to be done which if directly performed by him or another would be an offense against the United States" as a principal.[1] Vaughn's representations are no less culpable because they were accomplished in part through Laughlin, who lacked the intent necessary to violate section 1001. *See Catena*, 500 F.2d at 1323 ("a person may be guilty of causing a false claim to be presented to the United States even though he uses an innocent intermediary ... to actually pass on the claim").

■ Our conclusion that Vaughn is responsible for the statements in the lease is also supported by our previous decisions holding that a false document "need not be [provided] directly to the government agency; it is only necessary that the statement relate to a matter in which a federal agency has power to act." *Green*, 745 F.2d at 1208 (action against preparer of false test reports which were reviewed by the Nuclear Regulatory Commission). *See also Valdez*, 594 F.2d at 727–29 (action against preparer of false employment offers which were used by illegal aliens in applying for immigrant visas with the American Consulate). Although the lease may technically have been submitted by Laughlin, there was sufficient evidence for the jury to conclude that Vaughn filled in the lease under Wasilowski's signature with the knowledge that the lease would be submitted to the United States Customs Service in an attempt to reclaim the airplane for Laughlin.

### B

We also find sufficient evidence from which the jury could determine that the lease and the petition for remission are materially false.

Williams' trial testimony, and the portions of Williams' grand jury testimony read to the jury, indicated that there was no agreement between Williams and Vaughn regarding the length of the lease, the monthly rental amount, or the lessee's obligation to take out insurance. Williams also testified that no down payment was made, that no written agreement was drafted before the plane was taken, and that he did not see the lease filled in on the letterhead signed by Wasilowski until after the smuggling attempt failed.

■ From this testimony the jury could rationally infer that Vaughn filled in the lease agreement over Wasilowski's signature as he saw fit after the smuggling attempt failed. From Williams' testimony regarding the vague nature of the agreement, and the evidence that Vaughn knew of the smuggling plans, the jury could reasonably infer that the airplane was given for use in the smuggling attempt with the understanding that Vaughn, and ultimately Laughlin, would be paid something out of the proceeds. The evidence was sufficient to establish that the October 16, 1980, date of the lease, the $2,500 monthly rental amount, the $5,000 down payment, the six-month length of the lease, and the requirement that the lessee take out an insurance policy were not indicative of the actual agreement for the use of the airplane negotiated between Vaughn and Williams. The jury could rationally conclude that the lease was a false document, and that the claim in the petition for remission that the airplane was in Wasilowski's possession under a lease purchase agreement at the time it was seized was a false statement.

■ The evidence was also sufficient for the jury to conclude that the lease and

---

1. The government may proceed under 18 U.S.C. § 2, even though the statute was not referred to in that portion of the indictment charging Vaughn with violating section 1001. *See Tobon-Builes*, 706 F.2d at 1099 n. 3; *United States v. Catena*, 500 F.2d 1319, 1323 (3d Cir.), *cert. denied*, 419 U.S. 1047, 95 S.Ct. 621, 42 L.Ed.2d 641 (1974). *See also* Fed.R.Crim.P. 7(c)(3); *United States v. Gordon*, 641 F.2d 1281, 1284 (9th Cir.) (omission of statutory citation from indictment not fatal to indictment if defendant is not mis-

led), *cert. denied*, 454 U.S. 859, 102 S.Ct. 312, 70 L.Ed.2d 156 (1981). In this case, the government has always admitted Laughlin's innocence, so it was evident from the outset that the government was relying on section 2 to the extent that the statements in the lease and the petition were made by Laughlin at Vaughn's behest, and the district court instructed the jury on aiding and abetting liability before instructing on the elements of the specific offenses charged.

the false statement in the petition for remission were material because they had the propensity to influence agency action. *See Valdez,* 594 F.2d at 728–29. Subject to certain limitations not applicable here, the Commissioner of Customs has discretion to remit forfeitures "on such terms and conditions as, under the law, and in view of the circumstances, he shall deem appropriate." 19 C.F.R. § 171.21. If, as in this case, the property seized was in the possession of a third party who committed the acts which led to forfeiture, the petitioning owner must present "[e]vidence as to the manner in which the property came into the possession of such other person," and evidence that "the petitioner took reasonable steps to prevent the [property] from being used in violation of the customs laws." 19 C.F.R. § 171.13. Customs officials are also instructed to consider, among other factors, whether the lessee provided business and personal references to the owner, and whether there was an agreement "that the property would be used only in accordance with the law." *Id.*

The evidence reasonably indicates that the false terms written by Vaughn were designed to make the arrangement for the use of the plane look like a legitimate business deal concluded after a reasonable inquiry by Laughlin through Vaughn. Under the above regulations, remission of the plane was more likely under this false scenario, than under the arrangement for payment from the proceeds of the smuggling effort which the jury must have inferred actually existed. The lease, and the false claim that the plane was operated under a lease purchase agreement at the time of seizure, had the necessary propensity to influence agency action. The section 1001 conviction is affirmed.

## IV

 We also find the evidence sufficient to support the conspiracy and aiding and abetting counts. To establish that Vaughn was a member of the conspiracy, the evidence must show that Vaughn "had an intention and agreement to accomplish a specific illegal objective." *United States v. Melchor-Lopez,* 627 F.2d 886, 891 (9th Cir. 1980). *See also United States v. Lester,* 749 F.2d 1288, 1296 (9th Cir.1984). It is not necessary that Vaughn knew all of the details of the conspiracy, even a slight connection between Vaughn and the conspiracy is sufficient once the necessary intent is established. *See United States v. Escalante,* 637 F.2d 1197, 1200 (9th Cir.), *cert. denied,* 449 U.S. 856, 101 S.Ct. 154, 66 L.Ed.2d 71 (1980). Aiding and abetting consists of active participation in the illegal venture and intent to further the venture's illegal purpose. *United States v. Batimana,* 623 F.2d 1366, 1369–70 (9th Cir.), *cert. denied,* 449 U.S. 1038, 101 S.Ct. 617, 66 L.Ed.2d 500 (1980); *United States v. Groomer,* 596 F.2d 356, 358 (9th Cir.1979).

 Despite the inconsistency between Williams' grand jury and trial testimony, there was sufficient evidence to support the jury's verdict on the conspiracy and aiding and abetting counts. Williams' grand jury testimony, including his statement that Vaughn knew the purpose for which the airplane was being used, was introduced at trial. Given Williams' admission that he was fearful of Vaughn at the time he gave his grand jury testimony, and the half-hearted nature in which Williams recanted his grand jury testimony at trial, the jury could reasonably have believed Williams' grand jury testimony regarding Vaughn's knowledge of the illegal activities and disregarded Williams' trial testimony to the contrary. The loose manner in which the use of the airplane was arranged at the initial meeting, Williams' statements to Vaughn that the airplane would be taken to Mexico, and the presence of Brad Lewis, who Vaughn knew to be involved in smuggling and who provided the marijuana which was seized in this case, also support a reasonable inference that Vaughn knew the purpose for which the airplane was being used, and actively participated in the illegal venture by providing the airplane.

## V

 The mail fraud conviction is also supported by sufficient evidence. Mail

fraud consists of: (1) a scheme or artifice to defraud; and (2) use of the mails in furtherance of the scheme. *Green*, 745 F.2d at 1207–08; *United States v. Brutzman*, 731 F.2d 1449, 1454 (9th Cir.1984). Each mailing in furtherance of the scheme constitutes a separate violation. *United States v. Weatherspoon*, 581 F.2d 595, 602 (7th Cir.1978). *See United States v. Jones*, 712 F.2d 1316, 1320 (9th Cir.), *cert. denied*, 464 U.S. 986, 104 S.Ct. 434, 78 L.Ed.2d 366 (1983). Intent to deceive, *Green*, 745 F.2d at 1207, and knowing use of the mails, *Jones*, 712 F.2d at 1320, are the scienter elements of mail fraud. No one need actually be defrauded. *United States v. Rasheed*, 663 F.2d 843, 850 (9th Cir.1981), *cert. denied*, 454 U.S. 1157, 102 S.Ct. 1031, 71 L.Ed.2d 315 (1982); *Farrel v. United States*, 321 F.2d 409, 419 (9th Cir.1963), *cert. denied*, 375 U.S. 992, 84 S.Ct. 631, 11 L.Ed.2d 478 (1964).

A rational jury could find beyond a reasonable doubt that Vaughn had constructed a scheme to defraud the government. From the evidence that Vaughn provided Williams with blank sheets of his letterhead for Wasilowski's signature which were not seen with the lease filled in until after the smuggling attempt failed, and the lease terms such as the $2,500 monthly rental and the lessee's obligation to insure the airplane, which Vaughn knew had not been agreed to, the jury could conclude that Vaughn's actions in drafting the lease and submitting it with the petition for remission were conducted with the intent to defraud the government. There is no question that Vaughn used the mails to submit the petition and the three follow-up letters. Even though the scheme did not succeed in defrauding the government into

remitting the airplane, the jury could rationally have found that Vaughn intended to deceive the government and used the mails in furtherance of his scheme.

AFFIRMED.[2]

---

**2.** Vaughn also argues that: (1) Williams' grand jury testimony should not have been admitted; (2) the petition for remission was not actionable under section 1001 because it was submitted in connection with the housekeeping functions of a federal court; and (3) there was a variance between the indictment and the proof at trial. We find these arguments to be without merit.

We also reject Vaughn's claim that the district court erred in denying his section 2255 petition. Vaughn raised a number of contentions before

the district court, but his appeal from the section 2255 petition raises only his claim that there was insufficient evidence presented at trial. We reject this claim for the reasons stated above, and because Vaughn has not exhausted his direct appeals challenging the sufficiency of the evidence against him. *See Raiford v. United States*, 483 F.2d 445, 446 (9th Cir.1973) (section 2255 is not to be used as a substitute for direct appeal).