989 F.2d 501
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jerry CURRIE, Defendant-Appellant.
 No. 92-5440.
 United States Court of Appeals, Sixth Circuit.
 March 8, 1993.
 
 Before BOYCE F. MARTIN, JR. and BOGGS, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Defendant Jerry Currie appeals from a jury conviction of attempted possession, with intent to distribute, of four dosages of Dilaudid, a controlled substance, in violation of 21 U.S.C. § 846. For the reasons stated, we affirm the conviction.
 
 
 2
 * In 1988, the Shelby County, Tennessee, Sheriff's Department received information that a drug smuggling ring existed within the Shelby County Jails. Based upon this information, the government set up an undercover operation. Harry Work, an inmate who was serving time for property theft, assisted the officers.[1] The officers told Work that they would supply an outside contact in order to purchase drugs. This contact would actually be an officer. Work would provide his contact's name to the drug smugglers inside the jail. The smugglers would then contact the outside contact. Through this operation, the officers would identify and arrest the party who was trafficking drugs into the jail. The sheriff's office contacted a company that makes a drug known as Dilaudid, and the company agreed to manufacture some placebos to use during the operation.
 
 
 3
 Work knew defendant Currie because Currie served as a medical technician in the inmates' hospital. Currie's primary duty was to release drugs to inmates. Work told Currie he was interested in acquiring drugs. On March 5, 1991, Currie told Work to see an inmate named Pop Mims. Mims had some crack cocaine. Mims stated that he obtained his drugs through Currie. Work told Mims that Work could obtain drugs from the outside, but he would need to find a way to smuggle them into the jail. Mims replied that Currie likely could solve that problem. A couple of days later, Work and Mims met again and Mims reiterated that Currie was an excellent contact for acquiring drugs from the outside.
 
 
 4
 On March 8, 1991, Work contacted Detective Dunbar in order to proceed with the transaction. Work then contacted Mims, who called Currie. Currie agreed to participate. Work gave $60 to Mims and wrote down the beeper number of the outside contact. Work observed Mims take the money and the number to Currie. Officer Pamela Strong played the role of Work's drug contact on the outside. This same date, March 8, 1991, Currie, providing prompt service, used the beeper number to contact Strong. They spoke on the phone and arranged to meet at 4:00 p.m. at the corner of Poplar and Fourth Street. The two met and the transaction occurred. The government videotaped the entire proceeding. Work then observed that at around 4:40 or 5:00 p.m., Currie returned to the floor and handed a package to Mims through the bars. Mims then gave this small parcel to Work who delivered it to Officer Ronnie Stewart. This package was the same one that Strong gave to Currie. On April 10, 1991, Officer Strong contacted Currie. When asked if the transaction went as planned, Currie stated "yes." The government taped this conversation.
 
 
 5
 Soon after this last conversation, the government arrested Currie. A grand jury indicted him on August 7, 1991. The one-count indictment charged the defendant with attempted possession, with intent to distribute, of four dosages of Dilaudid, a controlled substance, in violation of 21 U.S.C. § 846. After a jury trial, the defendant was found guilty and sentenced to 15 months' imprisonment, followed by a three-year period of supervised release. Defendant then filed this timely appeal. He alleges that he received ineffective assistance of counsel, that the government violated the Jencks Act, and that the government's scheme was so outrageous as to constitute entrapment as a matter of law.
 
 II
 
 6
 Defendant's new counsel on appeal raises five grounds for alleging ineffective assistance of counsel: 1) counsel failed to discuss entrapment in his closing argument; 2) counsel failed to request a voice print identification of the tapes; 3) counsel pursued too many collateral matters; 4) defendant failed to ask for Jencks material for witness Harry Work; 5) an adequate investigation did not occur.
 
 
 7
 A defendant cannot raise ineffective assistance of counsel arguments for the first time on appeal. United States v. Sanchez, 928 F.2d 1450 (6th Cir.1991); United States v. Swidan, 888 F.2d 1076 (6th Cir.1989). "This rule is necessary because the record of the trial court's proceeding is normally insufficient for purposes of evaluating counsel's performance." United States v. Lopez, 728 F.2d 1359, 1363 (11th Cir.), cert. denied, 469 U.S. 828 (1984). Defendant failed to present this argument to the district court. Therefore, defendant cannot raise this issue.
 
 
 8
 However, assuming that defendant could raise this argument, he could not prevail. Strickland v. Washington, 466 U.S. 668 (1984), establishes a two-part test in order to show ineffective counsel: 1) that counsel was deficient; and 2) this deficiency prejudiced the defendant. Defendant cannot satisfy either prong of this test.
 
 
 9
 Failure to raise entrapment during closing argument does not constitute ineffective assistance of counsel. Counsel did discuss entrapment during opening arguments, and the court submitted an entrapment instruction to the jury. That defendant's counsel failed to emphasize this issue during closing argument represents no more than a tactical decision. Tactical decisions are presumed reasonable. Strickland, 466 U.S. at 694. Similarly, defendant's second and third allegations, that counsel failed to request voice prints and improperly pursued collateral matters, do not rise to the level of constitutional violations. Defense counsel's handling of the case was clearly reasonable. Counsel's tactical decision not to seek "voice print" verification of the participants in the taped conversation could well have been based on a fear that it would be incriminating. Accordingly, we reject defendant's argument.
 
 
 10
 Moreover, these allegations do not satisfy the second prong of the Strickland test. The government had a very strong case against Currie and he is unable to show that his attorney's handling of the case prejudiced his defense. Put succinctly, even assuming that defendant's trial counsel had conducted the case as defendant now wishes, the outcome would not have differed.
 
 
 11
 Appellant's fourth argument is that counsel failed to request Jencks material for Harry Work. However, the trial transcript makes clear that counsel did request and receive Work's Jencks material. J.A. at 44. Therefore, this argument must be rejected.
 
 
 12
 Defendant's final allegation concerns the public defender's failure to investigate adequately the case prior to trial. Strickland addressed this exact issue. The Supreme Court held that investigatory decisions are presumed reasonable. Strickland, 466 U.S. at 690. In this case appellant failed to put forth any evidence that counsel did not conduct a reasonable investigation. Rather, appellant made a blanket assertion that the investigation was insufficient. This assertion is not sufficient to overcome the presumption established in Strickland. Accordingly, we reject defendant's argument.
 
 III
 
 13
 The Jencks Act governs a criminal defendant's right to inspect statements made by government witnesses in federal prosecutions. The government must supply this information after the witness testifies. United States v. Presser, 844 F.2d 1275 (6th Cir.1988). After Mr. Work testified, the government gave to the defendant Jencks material regarding this witness. The government's other witness was Pamela Strong, the officer who played Work's drug contact on the outside. After her examination, the defendant requested Jencks information. Defendant now argues that the government should have delivered Strong's Jencks material at the same time that it delivered the material on Mr. Work. Defendant argues that providing the Jencks material at an earlier time better allows defense attorneys to prepare for cross-examination.
 
 
 14
 The statute requires only that the material be provided after direct examination:
 
 
 15
 After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement ... of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified.
 
 
 16
 18 U.S.C. § 3500(b). The defendant requested the Jencks material at the proper time, and the government provided it. At oral argument, defense counsel emphasized that earlier delivery would be beneficial. However, the current language of the Jencks Act is quite clear. The government fulfilled its statutory obligation.
 
 IV
 
 17
 Defendant also argues that the government's conduct constitutes entrapment as a matter of law. In United States v. Silva, 846 F.2d 352 (6th Cir.), cert. denied, 488 U.S. 941 (1988), this court stated that a defense of entrapment as a matter of law must show a patently clear case of lack of predisposition. Id. at 355. In determining whether the defendant satisfies this standard, this court must view the evidence in the light most favorable to the government, and resolve all reasonable inferences in favor of the government. Ibid. In this case, defendant failed to satisfy his burden. Evidence exists that Currie provided a drug delivery service for other inmates prior to his contact with Work. Moreover, reluctance on the part of the defendant is "the most important factor in determining the lack of predisposition as a matter of law...." United States v. McLernon, 746 F.2d 1098, 1113 (6th Cir.1984). Currie showed only eagerness to provide his services. He first told Work where he could obtain drugs within the jail, and then made the run for Work within one hour of getting the order. Defendant also argues that the government's conduct was outrageous. In United States v. Barger, 931 F.2d 359 (6th Cir.1991), this court described four factors that indicate when government conduct may be so "outrageous" as to deprive the appellant of his fifth amendment right to due process. The factors are: 1) the need for the police action as shown by the criminal conduct involved, 2) whether the alleged activity pre-existed police involvement, 3) the control the government exerted over the criminal enterprise, and 4) the impact of the police activity on the commission of the crime. In this case, the distribution of drugs within a jail constitutes a serious issue requiring clandestine police action. Evidence exists that the illegal activity pre-existed police activity. Moreover, it was Currie who contacted the police agent outside the jail. Defendant cannot show that the conduct of the government was outrageous as a matter of law.
 
 
 18
 For the foregoing reasons, the judgment of conviction is AFFIRMED.
 
 
 
 [1]
 Work testified that he did not receive any promises regarding his sentence in exchange for his help