990 F.2d 1262
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jennifer Susan EDELMAN, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Harold J. EDELMAN, Defendant-Appellant.
 Nos. 91-10035, 91-10036.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 11, 1993.
Decided March 8, 1993.
 
 1
 Before GOODWIN and FLETCHER, Circuit Judges, and HUFF,* District Judge.
 
 
 2
 MEMORANDUM DISPOSITION**
 
 OVERVIEW
 
 3
 A superseding indictment charged defendant Harold Edelman with filing a false United States individual income tax return for the years 1983 and 1984, in violation of 26 U.S.C. § 7206(1); and with filing a false United States corporation income tax return for the years 1983 and 1984, in violation of 26 U.S.C. § 7206(1). The superseding indictment also charged defendant Jennifer Susan Edelman with filing a false United States individual income tax return for the years 1983 and 1984, in violation of 26 U.S.C. § 7206(1); with aiding and assisting in the preparation of a false United States corporation income tax return for the years 1983 and 1984, in violation of 26 U.S.C. § 7206(2); and with two counts of making material false statements, in violation of 18 U.S.C. § 1001. The court dismissed the count regarding the filing of a false 1984 income return against Harold Edelman prior to submission to the jury, pursuant to Federal Rule of Criminal Procedure 29. The jury found Harold Edelman guilty on the remaining counts. The jury also found Jennifer Edelman guilty on all counts, with the exception of one count alleging the making of a false statement. The appellants' appeals of their convictions were consolidated, and the appellants now raise various challenges to their convictions. We affirm.
 
 FACTS AND PROCEDURE
 
 4
 The appellants are husband and wife and are the owners and sole shareholders of Central Bit Supply ("CBS"). CBS sells new and reconditioned drill bits to the drilling and mining industries. The government's theory of the case was that the appellants authorized false entries in CBS's books and provided false or incomplete information to their CPA in order to conceal income and to take deductions they were not entitled to assume.
 
 
 5
 The government alleged the appellants underreported their 1983 individual taxable income by $142,068.15. Instead of owing $10,266 in taxes as reported, the government contended the appellants owed $64,978.72. With regard to the appellants' 1984 individual income tax report, the appellants reported interest income of only $772, resulting in a total tax of $0 owed. Harold Edelman told IRS investigators he lived on loan repayments from CBS and his savings account. The government, however, contended the appellants underreported their taxable income by $103,161.89. With regard to CBS's corporate returns, the government alleged the appellants underreported taxable income in 1983 by $165,708.24 and in 1984 by $289,597.01.
 
 
 6
 The appellants retained bookkeepers to keep CBS's books and provided information to their CPA, Sam Cook, for the preparation of their individual and corporate tax returns. The government contended Harold Edelman gave instructions to the bookkeepers on how to make the false entries. The appellants argued they were unaware of these false entries because the bookkeepers made the false entries on their own accord and without direction from the appellants.
 
 
 7
 Prior to 1983, Ann Groso acted as CBS's bookkeeper. The appellants alleged Groso properly entered income and expenses with two exceptions. These exceptions involved "kickbacks" made by Harold Edelman to Richard Medley at MCO Resources ("MCR") to retain a lucrative business association with MCR. Edelman made the kickbacks by paying a sum in excess of the contract price between CBS and MCR for the sale of bits. Harold Edelman usually paid Medley cash, by cashing a CBS check at a bank, or would obtain a "marker" at a local casino which he would redeem for cash. Edelman also gave Medley a car worth $6,000, gave an MCR employee a truck worth $16,000, and made a $10,000 down payment on a home for Medley. The appellants' CPA told the appellants to post the kickbacks as draws on Harold Edelman's salary from CBS. Groso posted the kickbacks in this manner, with the exception of posting the down payment as "sales promotion" and the $16,000 truck as "equipment."
 
 
 8
 In January 1983, Marjorie Hanks replaced Groso as bookkeeper for CBS. Hanks is the mother of appellant Jennifer Edelman. During Hanks's tenure as bookkeeper, the kickbacks were improperly expensed as drill bit purchases for $17,120 on CBS's 1983 corporate return, and for $18,970 for CBS's 1984 corporate return. The appellants argued they were unaware of this misrepresentation. They alleged they did not discover the false postings until 1985 when Harold Edelman gave the books to MCR investigators who were conducting an internal investigation on kickbacks. The government, however, alleged Hanks told IRS investigators that Harold Edelman instructed her on how to post the kickbacks. In addition to the improper posting of kickbacks, the government introduced additional evidence of numerous, specific items of income not reported and improper deductions assumed for the years 1983 through 1985.
 
 DISCUSSION
 A. VINDICTIVE PROSECUTION
 
 9
 1. Standards for Vindictive Prosecution and Application
 
 
 10
 Jennifer Edelman first argues the additional counts filed against her in the superseding indictment should be dismissed based on the doctrine of prosecutorial vindictiveness. We conclude the prosecution did not seek the additional counts out of a hostility towards the appellant's exercise of her rights. The prosecution had a reasonable belief the evidence warranted the additional charges.
 
 
 11
 Due to the difficulty of demonstrating actual prosecutorial vindictiveness, the appellant may present facts indicating an appearance of vindictiveness. United States v. Gallegos-Curiel, 681 F.2d 1164, 1167-68 (9th Cir.1982). An appearance of vindictiveness arises only in "rare" situations in which the facts surrounding the addition of counts establishes "a very real likelihood of actual vindictiveness." Id. at 1170, 1167. The appellant establishes an appearance of vindictiveness "only where, as a practical matter, there is a realistic or reasonable likelihood of prosecutorial conduct that would not have occurred but for hostility or a punitive animus towards the [appellant] because [she] has exercised [her] specific legal rights." Id. at 1169.
 
 
 12
 In the present case, the original indictment returned on October 3, 1989, charged Jennifer Edelman only with making false statements to IRS agents. The charges against Harold Edelman in the original indictment included the filing of false individual income returns for the years 1983 and 1984, and the filing of false corporate returns for the years 1983 and 1984. On March 6, 1990, Jennifer Edelman moved to sever. On March 13, 1990, the prosecution obtained a superseding indictment, charging her with additional counts: filing a false individual return for the years 1983 and 1984 and assisting in the preparation of false corporate returns for the years 1983 and 1984. The district court then denied her motion for severance and motion to dismiss for prosecutorial vindictiveness.
 
 
 13
 We conclude the prosecution did not seek the superseding indictment against Jennifer Edelman out of a hostility towards her for seeking a severance. The circumstances indicate the prosecution had a good faith belief that the evidence warranted the additional charges. Indeed, the jury convicted Jennifer Edelman on all counts except one alleging a false statement. The prosecution represented that prior to the filing of the severance motion, it was in the process of reexamining the evidence, in particular Jennifer Edelman's role. In response to the appellant's charges of vindictiveness, the prosecution stated it sought the superseding indictment after "[a]n exhaustive examination of the evidence in preparation for trial (prior to the filing of the Severance Motion) revealed the important role that defendant JENNIFER EDELMAN played in defendants' business...."
 
 
 14
 If the prosecutor's conduct results from an objective assessment of the case, and the prosecution believes the evidence warrants additional or more serious charges, an appearance of vindictiveness does not arise, provided no procedural unfairness results to the appellant. Gallegos-Curiel, 681 F.2d at 1169; United States v. Austin, 902 F.2d 743, 745 (9th Cir.), cert. denied, 111 S.Ct. 200 (1990). We also have acknowledged that numerous procedural rights are routinely asserted prior to trial "as 'an integral part of the adversary process', [and] it would be 'unrealistic to assume that a prosecutor's probable response to such motions is to seek to penalize and to deter,' even if they do burden the prosecution." Gallegos-Curiel, 681 F.2d at 1168 (quoting United States v. Goodwin, 457 U.S. 368, 381 (1982)). Accordingly, we reject Jennifer Edelman's prosecutorial vindictiveness argument.
 
 2. Grand Jury Transcripts
 
 15
 In relation to the vindictiveness argument, the appellant also argues the district court erred by failing to order the disclosure of the grand jury transcripts of the superseding indictment proceedings. The appellant argues this information was necessary to establish her claim of vindictiveness. We also reject this argument.
 
 
 16
 The decision whether to disclose grand jury transcripts is within the district court's discretion. United States v. Walczak, 783 F.2d 852, 857 (9th Cir.1986). Disclosure "may not be ordered unless the defendant demonstrates with particularity the existence of a compelling need that is sufficient to outweigh the policy of grand jury secrecy." United States v. DeTar, 832 F.2d 1110, 1113 (9th Cir.1987). An appellant's speculation that prosecutorial misconduct occurred before the grand jury does not justify disclosure. Id.
 
 
 17
 The appellant has not demonstrated a need for the transcripts which would outweigh the need to maintain grand jury secrecy. She merely speculates the transcripts will reveal evidence of prosecutorial vindictiveness. Accordingly, we conclude this argument is without merit.
 
 B. SUFFICIENCY OF THE EVIDENCE
 
 18
 Jennifer Edelman next contends the evidence was insufficient to convict her on the count alleging she made a false statement to IRS investigators, in violation of 18 U.S.C. § 1001. Specifically, the appellant argues the government failed to produce sufficient evidence of her intent and the falsity of her statement. We conclude the government offered sufficient proof.
 
 
 19
 To resolve the appellant's argument, we must "review the evidence in the light most favorable to the government to determine if 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " United States v. Gillock, 886 F.2d 220, 221 (9th Cir.1989) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). In reviewing the evidence, we "must respect the exclusive province of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts." United States v. Ramos, 558 F.2d 545, 546 (9th Cir.1977); see also United States v. Feldman, 853 F.2d 648, 654 (9th Cir.1988), cert. denied, 489 U.S. 1030 (1989).
 
 
 20
 Section 1001 proscribes "the making of material false representations to a government agency regarding a matter within the agency's discretion." United States v. Vaughn, 797 F.2d 1485, 1490 (9th Cir.1986). With regard to intent, the representation "must be made intentionally and with the knowledge that it is false." Id. The prosecution, however, need not prove the defendant acted with the intent to deceive or with an otherwise evil intent. Id.; United States v. Carrier, 654 F.2d 559, 561 (9th Cir.1981).
 
 
 21
 Count Ten alleged Jennifer Edelman provided false information to Special Agent Michael L. Salmonson of the Criminal Investigation Division of the IRS. Salmonson had written the appellants' attorney, David Nielsen, requesting explanations for certain checks, including check number 2516. In response, Jennifer Edelman wrote a letter to Nielsen, stating check number 2516 had been used for a motor for a Ford T-Van, a vehicle owned by CBS. Jennifer Edelman stated Harold Lang of Werner Machine Shop ("WMS") could verify this claim. The letter stated:
 
 
 22
 Check # 2516, dated 4-3-84, was not to purchase a television for the motor home, but to purchase a motor for the T-Van which if you will look in the books you will see that you read it incorrectly. The T-Van is a 1979 Ford 1- 1/2 ton pick-up that has been in Central Bit Supply's possession for five years. The motor was purchased from Werners Machine Shop, now called W.M.S. I contacted the man who owns the place and he said he would not give us a receipt for the $2,000 because the man who worked for him at the time embezzled money from him, and apparently he feels this is part of it. However, Walt Miles, who is now our foreman, put the engine into the T-Van and remembers us getting it from him.
 
 
 23
 Nielsen testified he told the appellant the information must be correct or she could be subjected to criminal penalties. The appellants had treated the check as a business expense, which reduced their taxable income. Count ten alleges the check was not used for the motor, but Jennifer Edelman nevertheless made the statement with knowledge of its falsity.
 
 
 24
 The evidence relating to count ten includes testimony that Jennifer Edelman told Walt Miles, an employee of CBS, to obtain an invoice for the motor for the T-Van. Lang, the owner of WMS, told Miles he did not have an invoice. The government contended the appellant represented WMS performed the work and could verify such after Miles told the appellant WMS had no record of the work.
 
 
 25
 She argues the only permissible inference from the evidence is that she did not know what entity had performed the work. The evidence submitted, however, is sufficient to support the conviction. First, the jury could have found the statement was false. The statement represented WMS did the work even though Lang stated he did not have an invoice and did not make any representations that WMS performed the work. Second, the jury could have found not credible Her testimony that she did not know who performed the work or that she believed WMS performed the work. The prosecution produced evidence that she was told WMS did not have an invoice for the work. There is no evidence she was told WMS performed the work. Nevertheless, she made such a representation after her attorney told her all the statements needed to be correct or she could face criminal sanctions. Finally, the jury could have found her statement was intended to cover up the appellants' concealment of income over the prior two years. The jury, therefore, could have found she willingly made the statement with knowledge of its falsity.
 
 C. EXPERT TESTIMONY
 
 26
 The appellants next argue the district court abused its discretion by admitting the expert summary testimony of Agent Johnny Braithwaite because Braithwaite was not an "expert," and Braithwaite gave improper opinions. The appellants also argue the admission of Michael Salmonson's testimony was an abuse of discretion because Salmonson testified as to whether the appellants possessed the requisite criminal intent. These arguments are without merit.
 
 
 27
 The district court's admission of expert testimony or expert summary testimony is reviewed for an abuse of discretion. United States v. Bosch, 914 F.2d 1239, 1242 (9th Cir.1990); United States v. Marabelles, 724 F.2d 1374, 1381 (9th Cir.1984). We will not overturn a district court's admission of the testimony unless the district court committed "manifest error." Marabelles, 724 F.2d at 1381.
 
 
 28
 Agent Braithwaite testified as the government's expert summary witness relating to the computation of income and taxes. We conclude Braithwaite is an expert in this area. Braithwaite has a bachelor's degree in business, with a major in accounting. He has performed several hundred audits for the IRS and has testified in nine previous criminal trials in Nevada as an expert summary witness.
 
 
 29
 The appellants next argue Braithwaite's testimony was not relevant, and Braithwaite's testimony "gave the impression that he had superior knowledge of the facts, giving him credibility with the jury that simply wasn't real."
 
 
 30
 We first conclude Braithwaite's testimony was relevant. Under Federal Rule of Evidence 702, expert testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue...." Dang Vang v. Vang Xiong X. Toyed, 944 F.2d 476, 481 (9th Cir.1991). Braithwaite testified the taxable income reported was false. To demonstrate the falsity, Braithwaite performed computations. This testimony and demonstration may have been useful for the jury in understanding the complicated tax computations. Further, by demonstrating how the appellants underreported their taxes, the testimony could be relevant to the element of willfulness.
 
 
 31
 We next conclude the testimony did not take on a false credibility or usurp the jury's function of determining the issues of credibility and guilt. Again, Braithwaite testified the returns were false. In similar circumstances, we have concluded the introduction of expert summary testimony was not erroneous. United States v. Marchini, 797 F.2d 759, 765-66 (9th Cir.1986), cert. denied, 479 U.S. 1085 (1987). As in Marchini, Braithwaite's testimony was based on the evidence and exhibits admitted at trial. Further, defense counsel thoroughly cross-examined Braithwaite. The court also instructed the jury they were to determine the weight of the expert testimony. We conclude, therefore, the district court did not abuse its discretion in admitting the testimony.
 
 
 32
 The appellants next argue the admission of Salmonson's testimony violated Federal Rule of Evidence 704. Rule 704(b) prohibits an expert witness from testifying "as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged." Fed.R.Evid. 704(b). Rule 704(a), however, provides expert testimony is not "objectionable because it embraces an ultimate issue to be decided by the trier of fact." Fed.R.Evid. 704(a).
 
 
 33
 Salmonson testified the appellants made false entries in their records. The appellants argue the jury could have inferred willingness from this testimony. We conclude the district court did not abuse its discretion because the court gave a limiting instruction regarding the weight to be given expert testimony and cross-examination emphasized the defendant's activities were not criminal unless the defendant possessed the requisite criminal intent. Bosch, 914 F.2d at 1243-44; States v. Espinosa, 827 F.2d 604, 613 n. 4 (9th Cir.1987), cert. denied, 485 U.S. 968 (1988).
 
 D. INSTRUCTIONS ON DEFENSE THEORY OF CASE
 
 34
 The appellants next argue the district court erred by (1) failing to give their particular instruction regarding Hanks's actions, (2) failing to give their particular instruction regarding Cook's duty as an accountant, (3) failing to instruct the jury that "willfulness" requires an "evil motive," (4) failing to instruct the jury on the burden of proof relating to accounting decisions, and (5) failing to instruct the jury regarding corporate diversion. We conclude these arguments are without merit.
 
 
 35
 A district court must give a jury instruction on the theory of defense if the theory has a basis in law and the evidence presented at trial. United States v. Solomon, 825 F.2d 1292, 1295 (9th Cir.1987), cert. denied, 484 U.S. 1046 (1988). The court, however, need not give the particular language proposed by the defendant if "the instructions given fairly and adequately cover the defendant's theories of defense." Id. The district court has broad discretion in formulating the language of the instructions. Id.
 
 
 36
 We conclude the court adequately instructed the jury regarding the defense theory that the appellants did not direct Hanks to make the erroneous postings and did not know of the erroneous postings. We also conclude the court accurately instructed the jury on an accountant's role and the appellants' responsibility to provide complete and accurate information to the accountant.
 
 
 37
 Next, we conclude the court accurately informed the jury regarding the element of willfulness. "[T]he term 'willful' in § 7206(1) requires proof of a specific intent to do something which the law forbids; more than a showing of careless disregard for the truth is required." United States v. Brooksby, 668 F.2d 1102, 1104 (9th Cir.1982); See also United States v. Loney, 719 F.2d 1435, 1436 (9th Cir.1983). The jury instructions need not require the jury to find the defendant acted with the intent to deceive or with an otherwise evil intent. United States v. Hawk, 497 F.2d 365, 366-69 (9th Cir.), cert. denied, 419 U.S. 838 (1974). We further conclude the district court did not err by failing to give the appellants' proposed instruction regarding the burden of proof and accounting decisions. The appellants' proposed instruction has no basis in law.
 
 
 38
 Finally, the district court did not err by failing to give the appellants' proposed instruction regarding "corporate diversion." This instruction was unnecessary and may have served only to confuse the jury.
 
 E. DENIAL OF FAIR TRIAL
 
 39
 Finally, the appellants argue they were denied a fair trial because the prosecutor changed its theory as to why the kickbacks were illegal and, thus, not deductible. We again reject this argument.
 
 
 40
 "The Sixth Amendment guarantees a criminal defendant a fundamental right to be clearly informed of the nature and cause of the charges in order to permit adequate preparation of a defense." Sheppard v. Rees, 909 F.2d 1234, 1236 (9th Cir.1989). The prosecution's failure to inform the defense of its theory of prosecution can violate the sixth amendment. Id.; Gray v. Raines, 662 F.2d 569, 572 (9th Cir.1981). If, however, the defendant receives adequate notice of the prosecution's theory from the evidence presented at trial, a defendant is not deprived of the right to a fair trial. Morrison v. Estelle, No. 92-15041, 981 F.2d 425, 428 (9th Cir. Dec. 3, 1992).
 
 
 41
 We conclude the appellants received adequate notice of the prosecution's theory. The appellants were aware the prosecution intended to argue the kickbacks were not deductible because they were illegal. The appellants also received notice of the specific theory of illegality prior to trial. Accordingly, we conclude the appellants' final argument is without merit.
 
 
 42
 AFFIRMED.
 
 
 
 *
 The Honorable Marilyn L. Huff, United States District Judge for the Southern District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3